UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACK W.

                                  **Plaintiff,**                                    21-CV-01281-HKS

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                                  **Defendant.**

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

On February 2, 2015, plaintiff, at the age of 39, protectively applied for Title II Social Security Disability Benefits with the Social Security Administration ("SSA"). Dkt. #6, pp. 173-179.[1] Plaintiff alleged he was disabled due to major depression, psoriasis, psoriatic arthritis, rheumatoid arthritis, pain, alcohol abuse, osteolysis, abnormal liver function, and mood disorder, with an onset date of April 26, 2009. Dkt. #6, pp. 173, 209-211. Plaintiff last worked as a Registered Nurse. Dkt. #6, p. 761.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

The SSA denied plaintiff's application on May 27, 2015. Dkt. #6, pp. 83-100. Plaintiff requested a hearing, Dkt. #6, pp. 104-05, and a video hearing was held on October 31, 2017 before Administrative Law Judge ("ALJ") David Begley. Dkt. #6, pp. 42-82. Plaintiff was represented by counsel and testified, as did a vocational expert.

The ALJ issued an unfavorable decision on February 14, 2018. Dkt. #6, pp. 14-30.[2] The Appeals Council denied review on November 6, 2018. Dkt. #6, pp. 8-13. Plaintiff then filed an action in this Court, Dkt. #6, pp. 791-823, and, on May 19, 2020, the Court issued a Decision and Order remanding the case for further administrative proceedings. Dkt. #6, pp. 824-838.

Specifically, the Court found that the ALJ had erroneously failed to admit and consider a "Treating Medical Source Statement" from plaintiff's treating physician, Dr. Michael Pusatier, which was completed on November 10, 2017—after the administrative hearing but before the ALJ issued his decision. Dkt. #6, pp. 834-837. The Court noted that "[s]hould the ALJ conclude that Dr. Pusatier's opinion is not entitled to controlling weight, he should adequately explain his reasoning for his decision." Dkt. #6, p. 837.

On remand, a telephonic hearing was held before ALJ Mary Mattimore on June 3, 2021. Dkt. #6, pp. 728-767. Plaintiff, again represented by counsel, testified that during the period in question, he was struggling with depression and lacked motivation.

---

[2] The Court Transcript Index dates this decision as February 9, 2018, but it is in fact dated February 14, 2018. Dkt. #6, pp. 14, 26.

~ 2 ~

Dkt. #6, p. 746. He had difficulty sleeping, and the medication he took to help him sleep made him feel like a "zombie." Dkt. #6, p. 750.

Plaintiff further testified that the swelling in his right hand made it difficult to work as a nurse, his grip strength was poor, and it caused him pain. Dkt. #6, p. 751. He also had pain in his knees, feet, hips, back, and shoulders. Dkt. #6, p. 752. Bending was difficult and squatting could be "excruciating" at times. Dkt. #6, p. 753. His then-fiancée helped with most household chores. Dkt. #6, p. 753.

As to alcohol use, plaintiff testified that he has been sober since August 13, 2007. Dkt. #6, p. 757.

The ALJ then heard from Courtney Olds, a vocational expert ("VE"). Dkt. #6, p. 760. The ALJ asked the VE to assume a person of plaintiff's age, education, and work experience who can: lift and carry ten pounds frequently and twenty pounds occasionally; sit for eight hours in a work day but only two hours at any one time; stand for three hours in a work day but only for one hour at any one time; walk for two hours total in a work day but only for thirty minutes at any one time; frequently reach overhead bilaterally; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; work in moderate noise-level environments; have occasional exposure to unprotected heights and moving mechanical parts; and frequently drive a motor vehicle. Dkt. #6, p. 761. The ALJ further asked the VE to assume that this person can perform a low stress job and simple, routine work; make simple workplace

decisions; work at an "assembly line" pace; and tolerate minimal changes in workplace practices and settings. Dkt. #6, pp. 761-762.

The ALJ then asked the VE if, given those restrictions, plaintiff could perform his past work. Dkt. #6, p. 762. The VE opined that he could not. Dkt. #6, p. 762. The ALJ then asked the VE whether, given those restrictions, there were jobs in the national economy that plaintiff could perform. Dkt. #6, p. 762. The VE testified that there are light work jobs that plaintiff could perform, including office helper, small parts assembler, and hand packager. Dkt. #6, pp. 762-763.

The ALJ issued an unfavorable decision on September 1, 2021, Dkt. #6, pp. 702-727, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 26, 2009 to his date last insured of December 31, 2015; (2) through the date last insured, plaintiff had the following severe impairments: psoriatic arthritis, osteoarthritis, major depressive disorder, lumbar spine disorder, bipolar disorder, rheumatoid arthritis, and chondromalacia patella/patellofemoral syndrome of the bilateral legs; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[3] except that he is restricted to: lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting for eight hours in a workday but only for two hours at any one time; standing for three hours in a workday but only for one hour at any one time; walking for two hours in a workday but only for thirty minutes at any one time; frequently reaching overhead bilaterally; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds; working in a moderate noise-level environment; frequently driving motor vehicles; having occasional exposure to unprotected heights and moving mechanical parts; performing simple routine work and making simple workplace decisions not at a production rate pace (defined as an assembly line pace); and tolerating minimal changes in workplace practices and settings; and (5) through the date last insured,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

plaintiff was unable to perform any past relevant work but was capable of working as an office helper, small parts assembler, and hand packager and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp. 708-718.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not

perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's  conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

### **Challenge to the ALJ's Decision**

Plaintiff's sole challenge to the ALJ's decision is that, in formulating plaintiff's RFC, she failed to give good reasons for not giving Dr. Pusatier's treating source opinion controlling weight. Dkt. #7-1, pp. 16-20.

**The ALJ's Formulation of Plaintiff's RFC**

A review of the process by which the ALJ determined plaintiff's RFC will be helpful in evaluating her assessment of Dr. Pusatier's treating opinion.

The ALJ first reviewed plaintiff's disability and function reports from 2015, in which plaintiff described his physical and mental conditions and how they impacted his abilities and activities. Dkt. #6, pp. 209-222, 224-251. The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Dkt. #6, p. 711.

The ALJ next considered the record evidence regarding plaintiff's physical impairments. She noted that the "objective evidence provides some support to [plaintiff's] allegations" but that "it does not support the elevated level of impairment alleged." Dkt. #6, p. 711.

As the basis for this determination, the ALJ reviewed in detail plaintiff's medical records from June 2008 to late 2015. Dkt. #6, pp. 711-712. These records reflect generally progressive improvement in plaintiff's psoriasis and psoriatic arthritis from April 2009 to September 2015, with a decrease in the presence of psoriasis from "20 to 30 percent" of plaintiff's body to "probably less than 5 percent of his total body area." Dkt. #6,

p. 712. By September 2015, plaintiff's psoriasis was "assessed as mild and reasonably well controlled." Dkt. #6, p. 712.

Over the same period, the records reflect that, as to plaintiff's psoriatic arthritis and patellar instability, plaintiff sometimes presented with a normal gait and sometimes an antalgic gait; his neurological findings were unremarkable; and there was some swelling of his hands, but by December 2014, "he exhibited improving arthritic changes . . . of the hands." Dkt. #6, p. 712.

The ALJ also considered the report by a physical consultative examiner, Dr. Hongbiao Liu, who examined plaintiff on April 30, 2015. Dkt. #6, pp. 348-353. Dr. Liu stated that his examination of plaintiff showed "few significant abnormalities," and he opined that plaintiff had only "mild limitations for prolonged walking, bending, and kneeling." Dkt. #6, p. 713. The ALJ afforded Dr. Liu's opinion "some evidentiary weight," but she noted that it was somewhat vague regarding plaintiff's "specific functional limitations." Dkt. #6, p. 713.

In contrast, the ALJ found that the opinion of Dr. Jack LeBeau, an impartial medical expert who testified at the June 3, 2021 hearing, was entitled to "great evidentiary weight" because he "had the most recent opportunity to review the claimant's complete longitudinal record and provided a specific opinion regarding the claimant's residual functional capacity." Dkt. #6, p. 713. Dr. LeBeau opined that plaintiff could perform a

restricted range of light work with certain additional limitations, which the ALJ found was supported by objective evidence of record. Dkt. #6, p. 713.

The ALJ then addressed plaintiff's mental health records, noting that he had a history of depression and alcohol abuse, although he had been sober since 2007. Dkt. #6, p. 713. The records reflected that plaintiff had serious depression-related symptoms in 2009, although his speech and thought processes were consistently noted to be coherent. Dkt. #6, p. 714. Plaintiff's symptoms reportedly improved with medications in 2011, and in 2012 his depressive order was assessed as stable. Dkt. #6, p. 714. Plaintiff's depression also improved in 2014; he overcame an emotional setback in late 2014 on his own; and in December 2014, his depression was again assessed as stable. Dkt. #6, p. 715.

On April 30, 2015, plaintiff underwent a psychiatric consultative examination by Dr. Susan Santarpia. Dkt. #6, pp. 354-358. Plaintiff exhibited depressive symptoms but no thought disorder or cognitive symptomology/deficits. Dkt. #6, p. 715. Dr. Santarpia's mental status examination reported: plaintiff's demeanor and responsiveness were cooperative; he was well groomed with normal posture, appropriate eye contact, and intelligible speech; his thought processes were coherent and goal directed; his attention, concentration, and memory skills were intact; and his cognitive functioning was in the average range. Dkt. #6, pp. 356-357.

Dr. Santarpia thus opined that plaintiff was able, *inter alia*: to follow and understand simple instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; relate adequately with others; and that he would be mildly to moderately impaired in performing complex tasks independently. Dkt. #6, p. 357.

The ALJ found Dr. Santarpia's opinion entitled to "great weight" because it was "consistent with the longitudinal treatment record and supported by objective mental status findings." Dkt. #6, p. 715. She also noted that Dr. Santaria's opinion that plaintiff would have mild to moderate impairments in performing complex tasks independently was consistent the psychological problems plaintiff reported during the relevant period. Dkt. #6, p. 715.

Finally, the ALJ considered the response to a medical interrogatory by Dr. Linda Miller, a board-certified psychiatrist. Dkt. #5, 00. 715-716. Dr. Miller acknowledged plaintiff's major depressive disorder but opined that he had "no limitation" in a variety of mental and psychiatric functions and "is able to work on a sustained basis with no mental health data to support otherwise." Dkt. #6, p. 716. The ALJ granted significant weight to Dr. Miller's opinion that plaintiff could work on a sustained basis because of her qualifications and because the opinion was consistent with other opinions of record. Dkt. #6, p. 716. However, the ALJ gave little weight to the balance of Dr. Miller's opinion because it was contradicted by treatment records showing that plaintiff did have some

functional psychological limitations and, in that respect, Dr. Miller's opinion was not sufficiently restrictive. Dkt. #6, p. 716.

For similar reasons, the ALJ gave "little weight" to the administrative findings of the state agency non-examining doctor who found that plaintiff did not have a severe mental impairment. Dkt. #6, p. 717. The ALJ found instead that the record supported the conclusion that plaintiff's depressive disorder "caused more than minimal functional limitations and is therefore severe for purposes of this decision." Dkt. #6, p. 717. The ALJ again noted, however, that while plaintiff's mental impairment was not as limiting as alleged, it did cause "mild and moderate mental deficits during the period at issue." Dkt. #6, p. 717.

### **Dr. Pusatier's Treating Opinion**

Against this backdrop, the ALJ turned to Dr. Pusatier's functional assessment of plaintiff's abilities. Dkt. #6, p. 716. As noted, Dr. Pusatier completed a "Treating Medical Source Statement" in 2017 shortly after plaintiff's first administrative hearing. Dkt. #6, pp. 1309-1314. Dr. Pusatier had been plaintiff's primary care provider since 2002. Dkt. #6, p. 1310.

Dr. Pusatier's RFC questionnaire proposes severe restrictions on plaintiff's abilities: plaintiff would have difficulty maintaining even a "low stress" job; he would have "marked" limitations in a competitive work situation; he could only walk one city block without rest or severe pain; he could only sit for twenty minutes at a time and stand for

fifteen minutes at a time; he could sit and stand/walk for less than two hours in an eight-hour workday; he must walk for at least five minutes every 10-15 minutes in an eight-hour workday; he would need a job which permits shifting positions at will from sitting, standing, or walking; he would need to take unscheduled breaks during the workday; he could rarely lift and carry less than ten pounds and never more than ten pounds; he could never climb ladders and rarely twist, stoop, crouch, or climb stairs; he could "minimally" use his hands, fingers, and arms to grasp, twist, manipulate, or reach overhead; and he would be absent from work more than four days a month. Dkt. #6, pp. 1311-1314.

The ALJ observed that such restrictions "preclude any combination of sitting, standing, or walking that totals a full 8 hours." Dkt. #6, p. 716. She also found that Dr. Pusatier's opinion regarding the impact of plaintiff's mood disorder on his functional abilities was "not entitled to significant weight" because Dr. Pusatier is not a mental health professional. Dkt. #6, p. 717.

As to Dr. Pusatier's opinion about plaintiff's physical limitations, the ALJ found that the "sweeping restrictions" proposed by Dr. Pusatier were entitled only to "limited weight" because they were "not consistent with the longitudinal record and largely unsupported by objective findings." Dkt. #6, p. 717. Specifically, the ALJ explained that Dr. Pusatier's opinion that plaintiff would have been unable to "perform even sedentary activities on a full-time basis" was contradicted by treatment notes showing that plaintiff's arthritis symptoms had "stabilized and improved well before Dr. Pusatier" completed his treating questionnaire. Dkt. #6, p. 717.

Accordingly, the ALJ afforded Dr. Pusatier's opinion "little weight." Dk. #6, p. 717.

**<u>Plaintiff's Arguments</u>**

Plaintiff argues that the ALJ failed to give "good reasons" for not giving Dr. Pusatier's opinion controlling weight. This argument is not well taken.

Applicable regulations specifically provide that a treating provider's medical opinion is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).

The ALJ expressly found that Dr. Pusatier's opinions regarding plaintiff's functional limitations during the coverage period were not consistent with the overall medical records—including some of Dr. Pusatier's own notes—and were unsupported by objective findings. Dkt. #6, p. 717. While plaintiff argues that the ALJ relied on a "selective reading" of the evidence, Dkt. #7-1, p. 18, it is clear from the ALJ's discussion that she considered the "big picture" of plaintiff's conditions from 2009 to 2015 and concluded that his impairments, while present, had progressively improved and that they did not warrant the extreme restrictions that Dr. Pusatier proposed. Dkt. #6, pp. 711-715.

Thus, the ALJ did not "cherry pick" evidence that contradicted Dr. Pusatier's opinion, but rather she weighed conflicting medical evidence and rendered an RFC based on the record as a whole. *See Gallucci v. Kijakazi*, 22-CV-3174 (ALC), 2023 WL 6035664, at *5 (S.D.N.Y. Sept. 15, 2023) (rejecting argument that ALJ "cherry picked" evidence to find that plaintiff was not disabled; ALJ reviewed conflicting medical opinions and accepted those most consistent with the record).

Second, Dr. Pusatier's opinion was contradicted by other "substantial evidence" of record in the form of the opinions of Drs. Liu, LeBeau, Santarpia, and Miller. These opinions—two of which the ALJ construed more conservatively in plaintiff's favor—cite objective evidence in support of the conclusion that plaintiff was, during the period in question, capable of performing at a higher level than that reflected in Dr. Pusatier's opinion. Dkt. #6, pp. 712-716.

The ALJ thus did not err in failing to give controlling weight to Dr. Pusatier's opinion. *See Pichardo v. Comm'r of Soc. Sec.*, 21-cv-06873, 2023 WL 2596970, at *16 (S.D.N.Y. Mar. 22, 2023) (holding that ALJ did not err in giving little weight to treating physician's opinion in formulating plaintiff's RFC; physician's proposed restrictions were not borne out by her treatment records and conflicted with other medical opinions of record). *See also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." (citations omitted).

Plaintiff next argues that the ALJ improperly faulted Dr. Pusatier's opinion as to the impact of plaintiff's mood disorder because Dr. Pusatier is not a mental health professional. Dkt. #7-1, p. 17. However, this argument ignores the applicable regulations which provide that, once the ALJ decides not to afford controlling weight to a treating source's opinion, the ALJ should consider various factors, including whether an opinion source is a specialist in his or her area of practice. *See* 20 C.F.R. § 404.1527(c) (5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

On this point, plaintiff's reliance on *Alves v. Colvin*, No. 13-CV-3898 (RPP), 2014 WL 4827886 (S.D.N.Y. Sept. 29, 2014), is unavailing. There, the Court merely observed that: "Although specialization may be a ground to weigh a doctor's opinion more heavily under 20 C.F.R. § 404.1527, it does not follow that non-specialization is a reason to discount a medical professional's opinion *that is otherwise supported by the medical record as a whole*.") (emphasis added). As noted, the ALJ reasonably determined that Dr. Pusatier's opinion was not supported by the medical record as a whole. *Alves* is thus inapplicable.

Finally, plaintiff's argument that the ALJ improperly discounted Dr. Pusatier's opinion because it was "retrospective" is a red herring. Dkt. #7-1, pp. 19-20. The ALJ's reference to the date of Dr. Pusatier's questionnaire was made in the context

of explaining that his opinion did not adequately account for the improvements in plaintiff's conditions through his date last insured. Dkt. #6, p. 717.

In sum, "[p]laintiff's disagreement with the ALJ's RFC finding goes to the weight the ALJ afforded to certain medical opinions, which cannot be re-evaluated by the district court." *Gallucci*, 2023 WL 6035664, at *6 (citation omitted).

The Court thus finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         January 16, 2024

                                   **s/ H. Kenneth Schroeder, Jr.**
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**

~ 18 ~